[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The marriage of the parties was dissolved pursuant to Judge Petroni's written decision dated October 11, 2000. This judgment was rendered after a contested hearing. Judge Petroni's decision included an award of sole legal and physical custody of the one minor child, Qumal Fezaj, born August 7, 1998, to the plaintiff mother. Also included was a child support order of $120 per week, and an alimony award of $100 per week for two years, non-modifiable as to term and amount.
The defendant husband was a self-employed stone mason at the time of the dissolution of marriage. The parties concur that the monetary orders of the dissolution judgment were based upon the court's finding that (after expenses for materials, etc.) the defendant's gross income was $700 per week and his net income was $560 per week. The judgment also requires the defendant to reimburse the plaintiff for 40% of unreimbursed medical expense for the minor child. It does not include an order for daycare expenses.
Subsequently, the defendant father filed a Post-Judgment Motion for Modification of Child Support dated February 16, 2001 (served upon the plaintiff on March 20, 2001) seeking a reduction in the child support order. The plaintiff mother then filed a Motion for Contempt dated March 13, 2001, alleging the defendant's lack of compliance with the child support and alimony orders. The plaintiff also filed a Motion for Modification dated November 6, 2001 (served upon the defendant December 5, 2001) in which plaintiff seeks the defendant to pay a portion of her daycare expenses and an increase in the weekly child support order.
Due to a variety of scheduling issues, these motions to modify were not heard until presented collectively to this Court on February 7, 2002. This court heard approximately 3.5 to 4 hours of testimony and argument on these motions on February 7, 2002 and February 14, 2002. The defendant was represented by Attorney Leonard Coviello, and the plaintiff appeared CT Page 2406 pro se. Support Enforcement reported that the defendant was in arrears $8,220 as of February 13, 2002.
The defendant claims that he has been unable to obtain sufficient stone mason work as an independent contractor since the dissolution of marriage, resulting in a substantial reduction in his earnings. His federal income tax return for 2000 reflects an Adjusted Gross Income of $9,308. His current financial affidavit dated February 7, 2002, reflects a gross income of $687.50 per week with a net income of $136.92 per week (after deducting for expenses such as materials). The defendant further claims he lost work from at least two general contractors, for whom he had worked as an independent contractor, due to the plaintiff's interference with those business relationships.
The defendant further states that he recently accepted full-time employment as an employee construction laborer for another masonry company at $7 per hour. He claims that he has been unsuccessful in generating sufficient work as an independent contractor, particularly during the winter season.
"This court as the trier of fact, is obligated to determine the credibility of witnesses and the weight to be given their testimony."Gatter v. Gatter, 15 S.M.D. ___ (2001, Lifshitz, F.S.M.); Griffin v.Nationwide Moving and Storage Co., 187 Conn. 405, 422, 446 A.2d 799
(1982); Riccio v. Abate, 176 Conn. 415, 418, 407 A.2d 105 (1979); Raiav. Topehius, 165 Conn. 231, 235, 332 A.2d 93 (1973); Cooke v. Vieluch,32 Conn. App. 537, 549, 629 A.2d 1175, cert. denied, 228 Conn. 911,635 A.2d 1229 (1993). The Court has the right to accept part and disregard part of the testimony of any witness. Gatter v. Gatter, supra;Barrila v. Blake, 190 Conn. 631, 639, 461 A.2d 1375 (1983); Rood v.Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Lynk v. Lynk, 11 S.M.D. 233, 241 (1997).
This Court finds the defendant's testimony to be less than credible, based upon the following observations:
Firstly, the pro se plaintiff, through subpoena of defendant's bank records, successfully caused the defendant to reveal that he had received an inheritance check of $18,790 on or about October 1, 2001, and that some of these funds were used to pay off an $11,000 loan on his dump truck. The defendant's financial affidavit dated February 7, 2002, lists said loan as a continuing obligation.
Secondly, the plaintiff successfully caused the defendant to reveal that he gave approximately $9,000 of the inheritance proceeds to a relative of the defendant who recently arrived in the United States. The CT Page 2407 defendant stated that he merely was abiding by the wishes of the deceased, but offered no independent evidence confirming same, and acknowledged that he had no legal obligation to do so.
Thirdly, upon inquiry by this Court, the defendant indicated that when he priced stone mason jobs he would factor in a $12 per hour net for his labor. However, the defendant testified that during the latter part of 2001, he obtained a job constructing a stone wall for a total fee of $4,900. He indicated that he constructed this wall by himself over a two-week period, and that his cost of materials was between $2,000 and $3,000. Parenthetically, he was unable or unwilling to provide a more specific figure on the cost of said materials. In any event, he earned between $1,900-$2,900 for his labor for this two week job.
The plaintiff testified that her contact with the general contractors providing work to the defendant was limited to her attempts to ascertain the amount of income the general contractors were providing to the defendant. The defendant did not provide any independent testimony confirming that these attempts by the plaintiff in fact caused these general contractors to terminate their business relationship with the defendant.
The plaintiff also indicates that daycare costs have now become an issue, as a family member who had been providing her with weekday daycare at no cost is no longer available to do so.
It is well settled that in a motion to modify hearing, the burden of proof is on the moving party. Connolly v. Connolly, 191 Conn. 468, 473,464 A.2d 837 (1983); Kaplan v. Kaplan, 185 Conn. 42, 46, 440 A.2d 252
(1981); Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Tavares v.Tavares, 15 S.M.D. ___ (Bridgeport Superior Court 6/15/01, Colella, F.S.M.) (additional citations omitted). The moving party must demonstrate that the continued operation of the existing order would be unfair or improper. Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129 (1985);Mansfield v. Haynes, 12 S.M.D. 51, 52 (1998); Tavares, supra. The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed. McGuinness v.McGuiness, 185 Conn. 7, 10, 440 A.2d 804 (1981); Easley v. Easley, 15 S.M.D. ___ (New Britain Superior Court 9/12/01, Lifshitz, F.S.M.); SeeJanik v. Janik (Judicial District of Tolland, 12/30/01, Colella, F.S.M.).
 EARNING CAPACITY
This Court has previously noted: "The term `earning capacity' refers to one's ability to earn an income commensurate with one's experience, CT Page 2408 skills, training, and general abilities. A child support obligor does not have the luxury of unilaterally and voluntarily limiting his income (by the number of hours per week employed or by the type of employment accepted) to an amount substantially less than what he/she is capable of earning so long as he/she is obligated to pay child support, unless it is for a short period of time if good cause is shown, or unless extremely unusual circumstances are demonstrated." Tavares, supra; See also Janikv. Janik (Judicial District of Tolland, 12/30/01, Colella, F.S.M.).
Mr. Fazaj has failed to prove either of these conditions. This Court finds that the defendant father is not entitled to accept such a low wage as his sole source of income in light of his previous earnings and earning capacity as previously found by Judge Petroni so long as he has a legal obligation to support his child. Further, this Court finds that the defendant is not entitled to so limit income to $7 per hour, and to then use his voluntary limitation as a basis for a downward modification in child support. It is only appropriate that the defendant supplement his income during the off-season, given his continuing obligation to support his child. The child support obligation for an obligor with such seasonal and fluctuating earnings should be based upon his annual income. The defendant offered no evidence to suggest any sufficient reason, such as a debilitating medical condition for example, to establish any limitation on his earning capacity. Thus, this Court finds that the defendant has failed to demonstrate any substantial change in circumstances regarding his earning capacity as previously found by the Court. Therefore, the defendant is not entitled to a downward modification of the current child support obligation based upon his acceptance of employment at $7 per hour or upon any income less than his earning capacity as previously found by the Court.
The plaintiff did not provide sufficient evidence to demonstrate that the defendant's earning capacity has increased since the date of their dissolution of marriage. The plaintiff did not provide any admissible evidence proving that defendant has enjoyed an increase in the volume of his business, an increase in his income, or that the defendant has turned down any available business since the date of their dissolution of marriage. Thus, this Court finds that the plaintiff has failed to demonstrate any substantial change in the circumstances regarding the defendant's earning capacity as previously found by the Court.
The plaintiff attempted to present evidence to demonstrate that the defendant's earning capacity was greater at the time of the dissolution of marriage than was found by the trial court. This magistrate court does not have the authority to (and therefore shall not) sit as an Appellate court for purposes of reviewing the previous findings of the superior court trial judge regarding the defendant's then earning capacity. This CT Page 2409 Court has determined that the defendant's earning capacity has not changed since the date of the dissolution of marriage. If the plaintiff wishes to challenge the defendant's earning capacity as found by the trial court, the plaintiff must file a Motion to Open Judgment to be heard by the trial court on this issue. Therefore, the remaining issue is to determine whether either party is entitled to a change in the existing child support obligation based upon any statutory criteria.
 STATUTORY CRITERIA
C.G.S. Section 46b-86 (a), entitled "Modification of alimony or support orders and judgments" states in part that ". . . any final order for the periodic payment of permanent alimony or support . . . may anytime after . . . be modified by said court upon a showing of substantial changes in the circumstances of either party or upon the showing that the final order for child support substantially deviates from the child support guidelines . . . There shall be rebuttable presumption that any deviation of less than 15% from the child support guide lines is not substantial . . ."
As stated above, the trial court previously determined that the defendant's gross earning capacity was $700 per week and his net earning capacity $560 per week. Evidence presented by the defendant indicates that the plaintiff earned $8,255 of gross income during the final quarter of 2001, which results in a weekly average of $635 per week gross income, and approximately $508 net. (This court deducts 20% from the gross figure, i.e. the same percentage deducted from the gross income of the defendant.) When these figures are applied to a child support guidelines worksheet, they result in a line 12 combined income of $1,068, a line 13 basic support obligation of $210, a line 17 decimal share to the defendant of 52%, and a line 23 support obligation to the defendant of $109 per week. Since the $11 per week difference ($120 current minus $109) is a deviation of less than 15% from the currently weekly order of $120, this Court therefore must decline to modify the existing weekly order.
 DAYCARE EXPENSES
The plaintiff testified that she recently reduced the number of hours at work because she no longer had the assistance of relatives to provide daycare at no charge. Therefore, she is currently working 24 hours per week on weekends. The dissolution of marriage Judgment does not include a daycare expense order. It is noted that the proposed orders presented to the trial court by the plaintiff's attorney did not request an order for daycare expenses. It is also noted that the plaintiff's financial affidavit filed at the time of the dissolution of marriage indicates that CT Page 2410 her expenses were limited because she was living with her parents at that time. It therefore appears that the daycare expense issue was not raised at the dissolution hearing. However, even if it was, this court finds that there has been a substantial change in circumstances with respect to the daycare issue. Accordingly, the defendant is ordered to pay 40% of the plaintiff's qualified and reasonable daycare expenses incurred from the date of this decision.
 CONCLUSION
The defendant's motion for modification is denied. The plaintiff's motion for modification regarding periodic orders is denied. The plaintiff's motion for modification regarding daycare expenses is granted as set forth in the paragraph immediately above.
The pending Motion for Contempt is hereby continued to March 25, 2002. This court finds an arrearage due to the plaintiff in the amount of $8,220 as of February 15, 2002. The March 25, 2002, continuance date shall be a "excusable date" if on or before said date the defendant is in compliance with each and every weekly order in full and on time, and if the defendant makes a lump sum payment of $3,220. The Motion for Contempt is further continued to April 30, 2002, May 31, 2002, June 28, 2002, July 30, 2002 and August 27, 2002 for a $1,000 lump sum payment toward the arrearage on each of said dates and for full compliance with each and every weekly order in full and on time. If these conditions are met, each date shall be excusable. Further, on the lump sum payment due August 26, 2002, the defendant shall add to the $1,000 payment the amount of any arrearage that has accumulated from February 13, 2002 to the date of this decision.
BY THE COURT
JOHN E. COLELLA Family Support Magistrate